IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALVIN TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case Number: |
| FEDERAL RESERVE BANK OF ) | |
| ST. LOUIS, ) | **JURY TRIAL DEMANDED** |
| Serve At: ) | |
| Federal Reserve Bank of St. Louis ) | |
| 1 Federal Reserve Bank Plaza ) | |
| Saint Louis, MO 63102 ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW the Plaintiff, Alvin Taylor ("Plaintiff"), by and through her attorneys, and alleges the following against Federal Reserve Bank of St. Louis ("Defendant"):

1. This case is brought by Plaintiff against Defendant. Plaintiff seeks monetary damages to redress the deprivation of Rights accorded to Plaintiff under the Civil Rights Act, 42 U.S.C. §1981 ("§1981"), and 42 U.S.C. §2000(e) *et seq.* ("Title VII").

### JURISDICTION AND VENUE

2. The allegations contained within all above paragraphs are hereby re-alleged and incorporated as if fully set forth herein.

3. Both jurisdiction and venue are proper in this Court, because federal questions are involved, and because the unlawful employment practices were committed

1

within this judicial circuit. Jurisdiction and venue are therefore proper in this Court pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1391(b).

4. At all times mentioned herein, all of Defendant's employees were acting within the scope of their employment with Defendant in furtherance of its business.

## PARTIES

5. The allegations contained within all above paragraphs are hereby re-alleged and incorporated as if fully set forth herein.

6. Plaintiff is a male, African-American and permanent resident of the United States.

7. At all times relevant herein, Plaintiff was employed by Defendant.

8. Defendant is a bank licensed to operate in the State of Missouri, with its principal place of business at 1 Federal Reserve Bank Plaza, St. Louis, MO 63102.

9. At all times relevant herein, Defendant has engaged in interstate commerce, done business in the State of Missouri, and has been an employer within the meaning of 42 U.S.C. §2000(e) *et seq.* ("Title VII").

10. Plaintiff is under information and belief that, at all times relevant herein, Plaintiff's manager during his employment with Defendant, Sergeant Chris Canava, had the ability to make significant changes in Plaintiff's employment status, such as hiring, firing, failing to promote, and/or reassigning Plaintiff to a new position with significantly different responsibilities.

11. At all times mentioned herein, all of Defendant's employees were acting within the scope of their employment with Defendant in furtherance of its business.

## CONDITION PRECEDENT

12. The allegations contained within all above paragraphs are hereby re-alleged and incorporated as if fully set forth herein.

13. On or about July 2, 2018, Plaintiff timely filed – with the Equal Employment Opportunity Commission (EEOC) – a Charge of Discrimination against Defendant on the basis of race, color, sex, and retaliation. A copy of said charge of discrimination is attached hereto, marked as "Plaintiff's Exhibit 1," and is hereby incorporated as if fully set forth herein.

14. Plaintiff received one Notice of Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC") on or about March 20, 2019. A copy of Plaintiff's Notice of Right to Sue from the EEOC is attached hereto, marked as "Plaintiff's Exhibit 2," and is hereby incorporated as if fully set forth herein.

15. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action, and this Petition was filed within the applicable statute of limitations.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

16. The allegations contained within all above paragraphs are hereby re-alleged and incorporated as if fully set forth herein.

17. Plaintiff began working for Defendant in a law enforcement capacity as a security officer in or around January 26, 2015. Sergeant Chris Canava was assigned as Plaintiff's supervisor.

18. When Plaintiff began working as an officer for the Federal Reserve Bank, Sgt. Canava was also his supervisor at his secondary job at AutoZone.

19. Sgt. Canava would frequently, and intentionally, schedule Plaintiff's shifts in such a way as to create a conflict with his (known) secondary shifts and/or to cause Plaintiff to have little time at home due to the scheduling of his shifts at both places of employment.

20. Sgt. Canava would ridicule and degrade Plaintiff and other Federal Reserve officers, but would react with anger and threats if jokes were ever directed at him.

21. On one occasion, Sgt. Canava made threatening remarks to Plaintiff to the effect of "I heard someone was talking about me on post. All I know is he better watch himself. I'm not mentioning any names but his initials are A.T. [Plaintiff's initials]."

22. Sgt. Canava enjoyed calling himself, and having others call him, "Sgt. Satan." He attempted to convince Plaintiff to refer to him by that name, but Plaintiff refused.

23. On one occasion, Plaintiff was discussing with another officer the proper protocol for use of force with a subject on the job. Sgt. Canava intervened in the conversation angrily, calling Plaintiff a "know-it-all" and directing profanity at Plaintiff.

24. On another occasion, Plaintiff and another officer, Keith Shorter, whom Sgt. Canava also disliked, were picked to work a special detail. Sgt. Canava was angered by this and mocked the two officers; referring to them as "a Reverend and a Deacon."

25. Around the time that the 2016 electoral race for Sheriff of the City of St. Louis began, Sgt. Canava began making racist remarks to, and in the presence of, Plaintiff.

4

26. For example, Sgt. Canava made a comment to Plaintiff to the effect that candidate Charley Williams was "[U.S. Senator] Lacy Clay's nigga."

27. Sgt. Canava made additional racially-themed comments about the electoral race, predicting to Plaintiff that Williams would "split the black vote on the North Side and [white candidate] Vaccarro [will] slide right in."

28. Plaintiff's impression of these remarks was that Sgt. Canava was deliberately being antagonistic and offensive to Plaintiff.

29. In 2017, it was announced that a position was available for the rank of sergeant. Approximately seven officers applied for the position.

30. Sgt. Canava cornered Plaintiff at work and warned him not to apply for the position.

31. Sgt. Canava threatened Plaintiff with a negative "write up," should Plaintiff apply for the open position.

32. When the final selection was made for the position, Sgt. Canava asked Plaintiff if he had applied for it. When Plaintiff responded that he did not apply, Sgt. Canava remarked "huh…I guess you didn't get a write up either!"

33. On another occasion, when Plaintiff had received a write up, he was told that for the designated length of the probationary "write up" period, officers were not permitted to participate in any extra activities, special training, or special assignments.

34. At least two other officers that were on the "write up" probationary period, however, were permitted to participate in extra activities, special training, or special assignments. These two officers were white.

35. On Thanksgiving of 2017, Plaintiff was working the day shift. As the end of their shift neared, he and his co-workers were discussing whether or not all of those scheduled for the second shift would turn up for work; or if someone would fail to do so and thereby cause one of the day shift workers to have to stay late.

36. When the second shift officers all arrived as scheduled, which consisted of four males and one female officer, Sgt. Canava remarked to Plaintiff, "We are all good, we have four and the whore."

37. Plaintiff questioned Sgt. Canava's use of this language. In response, Sgt. Canava attempted to make a lighthearted excuse.

38. Plaintiff also discussed the remark with fellow officer Hogue, who agreed that the comment by Sgt. Canava was inappropriate.

39. A few days after the remark was made, Plaintiff told the female officer, Sonya White, about the comment by Sgt. Canava.

40. Following that disclosure, Plaintiff was called into a meeting with Lieutenant Mike Morgan, during which he was informed that the involved parties had been spoken to and the incident was resolved.

41. Approximately one week later, Plaintiff was again called into a meeting with Lieutenant Morgan, Captain Kentch, and others of his superiors. During the meeting, he was accused by his superiors of having fabricated the comment by Sgt. Canava.

42. He was further admonished that in disclosing the remark to Officer White, he caused her to act erratically, feel unsafe at work, and created a "hostile work environment."

6

43. Captain Kentch then made statements to the effect that "when people [i.e., Plaintiff], make up lies like this, it causes other people [i.e., Officer White] to do things out of ordinary character."

44. Plaintiff later learned that Officer White inadvertently brought a personal handgun through security and into the bank, which is a breach of security and a violation of policy.

45. Thereafter, Plaintiff was fired.

46. Neither Officer White, nor the officers running the entrance security and the x-ray machine that failed to catch the gun as it passed through security, were fired.

## COUNT I – RACE DISCRIMINATION
### Violation under 42 U.S.C. §1981

47. The allegations contained within all above paragraphs are hereby re-alleged and incorporated as if fully set forth herein.

48. Plaintiff, by virtue of his African-American race, is a member of a class of persons protected by 42 U.S.C. §1981.

49. During the course of Plaintiff's employment, Defendant's representatives, including, but not limited to, Sgt. Chris Canava, while acting within the scope and course of employment, engaged in a pattern and practice of intentional discrimination against Plaintiff based on his African-American race.

50. At all times, the racially-harassing and -discriminatory conduct was severe and unwelcome.

51. Defendant's harassment had the purpose and effect of unreasonably interfering with Plaintiff's work performance, thereby creating an intimidating, hostile and offensive working environment.

52. Management level employees of Defendant, including Sgt. Chris Canava, knew, or should have known, of the racial harassment and racial discrimination described herein, but failed to take appropriate remedial action.

53. As a result of the racial harassment and racial discrimination described herein, Plaintiff was fired from his position as a Federal Reserve Officer.

54. Plaintiff's African-American race was the motivating factor in the disparate treatment he suffered, and continues to suffer.

55. Defendant, through its agents and employees, engaged in these discriminatory practices with malice and/or reckless indifference to Plaintiff's federally protected rights.

56. As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff suffers, and will continue to suffer, damages, including, emotional distress, and inconvenience.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count I of his Complaint, for a finding that he has been subjected to unlawful discrimination and unlawful retaliation provided by 42 U.S.C. 1981; for an award of compensatory and punitive damages; for costs expended; for reasonable attorneys' and expert fees; and for such other and further relief the Court deems just and proper.

## COUNT II – RETALIATION

## Violation under 42 U.S.C. §1981

57. The allegations contained within all above paragraphs are hereby re-alleged and incorporated as if fully set forth herein.

58. As alleged herein, Plaintiff was discriminated against for engaging in protected activities including, but not limited to, Plaintiff's complaints concerning the racial discrimination and racial harassment he was subjected to during his employment with Defendant.

59. By reason of Plaintiff's complaints, Defendant retaliated against Plaintiff.

60. As a result of engaging in said protected activities, Plaintiff has suffered – and continues to suffer – adverse employment actions as alleged in this Complaint.

61. Plaintiff's reporting of racial harassment and racial discrimination was the motivating factor in suffering adverse employment actions.

62. Defendant's retaliation against Plaintiff was committed with malice or reckless disregard of his federally protected rights. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter it and other companies from engaging in similar conduct.

63. Defendant's retaliatory actions against Plaintiff have caused him to suffer emotional distress, inconvenience, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of his Complaint, for a finding that he has been subjected to unlawful discrimination and unlawful retaliation provided by 42 U.S.C. 1981*;* for an award of compensatory and punitive

damages; for costs expended; for reasonable attorneys' and expert fees; and for such other and further relief the Court deems just and proper.

### COUNT III – RACIAL DISCRIMINATION AND RACIAL HARASSMENT
### Violation under 42 U.S.C. §2000(e) *et seq.*

64. The allegations contained within all above paragraphs are hereby re-alleged and incorporated as if fully set forth herein.

65. Plaintiff, by virtue of his African-American race, is a member of a class of persons protected by 42 U.S.C. §2000(e) *et seq* ("Title VII").

66. During the course of Plaintiff's employment, Defendant's representatives, including, but not limited to, Sgt. Chris Canava, while acting within the scope and course of employment, engaged in a pattern and practice of intentional discrimination against Plaintiff based on his African-American race.

67. At all times, the racially-harassing and -discriminatory conduct was severe and unwelcome.

68. Defendant's harassment had the purpose and effect of unreasonably interfering with Plaintiff's work performance, thereby creating an intimidating, hostile and offensive working environment.

69. Management level employees of Defendant, including Sgt. Chris Canava, knew, or should have known, of the racial harassment and racial discrimination described herein, but failed to take appropriate remedial action.

70. As a result of the racial harassment and racial discrimination described herein, Plaintiff was terminated from his position as a Federal Reserve officer.

71. Plaintiff's African-American race was the motivating factor in the disparate treatment he suffered, and continues to suffer.

72. Defendant, through its agents and employees, engaged in these discriminatory practices with malice and/or reckless indifference to Plaintiff's federally protected rights.

73. As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff suffers, and will continue to suffer, damages, including, emotional distress, and inconvenience.

WHEREFORE, Plaintiff prays for judgment against defendant on Count III of his Complaint, for a finding that he has been subjected to unlawful racial harassment and discrimination provided by 42 U.S.C. 2000(e) *et seq.*; for an award of compensatory and punitive damages; for costs expended; for reasonable attorneys' and expert fees provided by 42 U.S.C. §2000(e) -5(k); and for such other and further relief the Court deems just and proper.

## COUNT IV – RETALIATION
**Violation under 42 U.S.C. §2000(e) *et seq.***

74. The allegations contained within all above paragraphs are hereby re-alleged and incorporated as if fully set forth herein.

75. As alleged herein, Plaintiff was discriminated against for engaging in protected activities including, but not limited to, Plaintiff's complaints concerning the racial discrimination and racial harassment she was subjected to during his employment with Defendant.

11

76. By reason of Plaintiff's complaints, Defendant retaliated against Plaintiff.

77. As a result of engaging in said protected activities, Plaintiff has suffered – and continues to suffer – adverse employment actions as alleged in this Complaint.

78. Plaintiff's reporting of racial harassment and racial discrimination was the motivating factor in suffering adverse employment actions.

79. Defendant's retaliation against Plaintiff was committed with malice or reckless disregard of his federally protected rights. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter it and other companies from engaging in similar conduct.

80. Defendant's retaliatory actions against Plaintiff have caused him to suffer emotional distress, inconvenience, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for judgment against defendant on Count IV of his Complaint, for a finding that he has been subjected to unlawful racial harassment and discrimination and unlawful retaliation provided by 42 U.S.C. 2000(e) *et seq.*; for an award of compensatory and punitive damages; for costs expended; for reasonable attorneys' and expert fees provided by 42 U.S.C. §2000(e) -5(k); and for such other and further relief the Court deems just and proper.

### COUNT V – GENDER DISCRIMINATION
### Violation under 42 U.S.C. §1981

81. The allegations contained within all above paragraphs are hereby re-alleged and incorporated as if fully set forth herein.

82. Plaintiff, by virtue of his male gender, is a member of a class of persons protected by 42 U.S.C. §1981.

83. During the course of Plaintiff's employment, Defendant's representatives, including, but not limited to, Sgt. Chris Canava, while acting within the scope and course of employment, engaged in a pattern and practice of intentional discrimination against Plaintiff based on his male gender.

84. At all times, the gender-harassing and -discriminatory conduct was severe and unwelcome.

85. Defendant's harassment had the purpose and effect of unreasonably interfering with Plaintiff's work performance, thereby creating an intimidating, hostile and offensive working environment.

86. Management level employees of Defendant, including Sgt. Chris Canava, knew, or should have known, of the gender discrimination and gender harassment described herein, but failed to take appropriate remedial action.

87. As a result of the gender discrimination and gender harassment described herein, Plaintiff was fired from his position as a Federal Reserve Officer.

88. Plaintiff's male gender was the motivating factor in the disparate treatment he suffered, and continues to suffer.

89. Defendant, through its agents and employees, engaged in these discriminatory practices with malice and/or reckless indifference to Plaintiff's federally protected rights.

90. As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff suffers, and will continue to suffer, damages, including, emotional distress, and inconvenience.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count I of his Complaint, for a finding that he has been subjected to unlawful discrimination and unlawful retaliation provided by 42 U.S.C. 1981; for an award of compensatory and punitive damages; for costs expended; for reasonable attorneys' and expert fees; and for such other and further relief the Court deems just and proper.

### COUNT VI – RETALIATION
### Violation under 42 U.S.C. §1981

91. The allegations contained within all above paragraphs are hereby re-alleged and incorporated as if fully set forth herein.

92. As alleged herein, Plaintiff was discriminated against for engaging in protected activities including, but not limited to, Plaintiff's complaints concerning the gender discrimination and gender harassment he was subjected to during his employment with Defendant.

93. By reason of Plaintiff's complaints, Defendant retaliated against Plaintiff.

94. As a result of engaging in said protected activities, Plaintiff has suffered – and continues to suffer – adverse employment actions as alleged in this Complaint.

95. Plaintiff's reporting of gender discrimination and gender harassment was the motivating factor in suffering adverse employment actions.

96. Defendant's retaliation against Plaintiff was committed with malice or reckless disregard of his federally protected rights. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter it and other companies from engaging in similar conduct.

97. Defendant's retaliatory actions against Plaintiff have caused him to suffer emotional distress, inconvenience, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of his Complaint, for a finding that he has been subjected to unlawful discrimination and unlawful retaliation provided by 42 U.S.C. 1981; for an award of compensatory and punitive damages; for costs expended; for reasonable attorneys' and expert fees; and for such other and further relief the Court deems just and proper.

        Respectfully submitted,

        HOLLINGSHEAD & DUDLEY

        /s/ Daniel J. Nolan
        Daniel J. Nolan   #60922
        7777 Bonhomme Avenue, Suite 2401
        Saint Louis, Missouri 63105
        Telephone:   (314) 480-5474
        Facsimile:   (314) 594-0825
        Email:           dnolan@hdtriallawyers.com

        ATTORNEY FOR PLAINTIFF